*12*

United States District Court
Southern District of Texas
ENTERED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

MAR 1 0 1998

Michael N. Milby
Clerk of Court

CRISTOBAL BENAVIDEZ,                §
              Movant,    §
                    §      CIVIL CASE No M-97-CV-118
v.                                  §
                    §        CRIMINAL No. M-94-153
UNITED STATES OF AMERICA,           §
          Respondent.       §

## REPORT AND RECOMMENDATION

Cristobal Benavidez, a federal prisoner proceeding pro se, has filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. Benavidez raises a myriad of claims relating to the alleged unconstitutionality of his conviction. Pending is the government's motion to dismiss in which it argues that Benavidez's claims are procedurally barred, lack merit, or otherwise do not warrant the granting of collateral relief. As discussed below, because all of movant's claims are either inadequately presented or fail to satisfy the rigorous standards for obtaining collateral review, this Court recommends that Benavidez's § 2255 motion be denied and that this action be dismissed.[1]

### I. BACKGROUND

On August 2, 1994, a federal grand jury in the Southern District of Texas, McAllen Division, returned an indictment charging movant Benavidez with the offense of possession of a firearm by a convicted

---

[1]Because "the motion, files, and record of the case conclusively show that no relief is appropriate," an evidentiary hearing need not be held in this case. United States v. Samuels, 59 F.3d 526, 530 (5th Cir. 1995) (citations omitted).

CutePDF - www.fastio.com

felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  The
indictment stemmed from a search of a residence in Pharr, Texas,
conducted jointly by various law enforcement agencies.  The residence
was owned by Benavidez's mother, and movant was reported to have been
residing there with her.  The search resulted in the discovery of a
.38 caliber revolver under the bed on which Benavidez was found lying
and a 12 gauge shot-gun in an open closet a few feet away.  Law
enforcement officials were acting in part on a tip provided by a
confidential informant indicating that movant had been seen
possessing firearms.

The Federal Public Defender's Office was appointed to represent
Benavidez and movant entered a plea of not guilty.  Trial was set for
November 8, 1994.  Prior to trial, Benavidez's counsel filed numerous
motions on his behalf, including a motion for discovery, motion to
disclose the identification of the confidential informant, motion to
suppress, and two motions in limine.  The primary basis for
Benavidez's motion to suppress was that the search warrant lacked
probable cause due to the questionable knowledge and veracity of the
confidential informant.  The District Court denied the motion to
suppress in a written order dated November 1, 1994.

Benavidez's trial lasted a little more than one day.  Movant
testified on his own behalf, claiming that the weapons seized from
his mother's house did not belong to him and that he did not know
they were in the bedroom where he was staying.  Benavidez claimed
that he did not live at his mother's house, but only happened to be

spending the night there when the agents executed the search warrant. Movant's mother and brother also testified for the defense, corroborating Benavidez story that the guns did not belong to him and that he did not live at his mother's house.

The government called Benavidez's probation officer as a witness. She testified that she had made several home visits to Benavidez at his mother's house and that that is where movant claimed to reside. The government also called law enforcement agents who participated in the search of Benavidez's mother's house as witnesses. Those agents testified that in addition to finding the firearms in the bedroom where Benavidez was discovered, they also found other personal effects belonging to Benavidez, including numerous items of correspondence mailed to him at that address.

On November 9, 1994, the jury returned a verdict of guilty and the District Court set the case for sentencing. Prior to sentencing, Benavidez filed a motion to disqualify his attorney and to set aside the jury verdict. The basis of both motions was the discovery that movant's counsel had applied for a position with the U.S. Attorney's Office sometime before the conclusion of trial and had failed to disclose that fact to Benavidez. Movant argued that his counsel had labored under a conflict of interest and had rendered ineffective assistance of counsel. After holding hearings on these claims, the District Court denied both motions orally and directed different counsel from the Public Defender's Office to continue representing movant through appeal. The District Court then sentenced Benavidez

3

to 293 months in prison and a three-year term of supervised release.

Benavidez timely appealed his conviction to the Fifth Circuit Court of Appeals. On appeal, movant argued that the search warrant lacked adequate probable cause to justify good faith reliance on it by law enforcement officers, the evidence was insufficient to support the jury's verdict, and the District Court erred by not adequately articulating its reasons for the sentence it imposed. The Court of Appeals affirmed movant's conviction in an unpublished opinion. <u>See</u> <u>United States v. Benavidez</u>, No. 95-40108, slip op. at 2 (5th Cir. Feb. 9, 1996).

On April 25, 1997, Benavidez filed the instant motion to vacate sentence pursuant to 28 U.S.C. § 2255, raising the following assortment of claims: conflict of interest by trial counsel; juror bias; unconstitutionality of 28 U.S.C. § 922(g); unreliability of confidential informant's tip; prosecutorial misconduct; improper reliance on confidential informant's tip; improper introduction of evidence in violation of Federal Rule of Evidence 403; and ineffective assistance of trial and appellate counsel. Movant has also filed three requests for appointment of counsel and a motion for evidentiary hearing. The government responded to Benavidez's § 2255 motion by filing a motion to dismiss.

## II. ANALYSIS

As a threshold matter in a § 2255 proceeding, federal courts must consider the applicable standard of review and the extent to which a petitioner's claims are cognizable under § 2255. <u>See</u> <u>United</u>

States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998). Following a conviction and exhaustion or waiver of the right to direct appeal, "we presume a defendant stands fairly and finally convicted." Id. (citing United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), cert. denied, 502 U.S. 1076 (1992)). Federal court review under § 2255 is thus limited to questions of a constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. Id. Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir.), cert. denied, 506 U.S. 1007 (1992). Finally, a defendant is absolutely precluded from raising issues on collateral review that have already been considered on direct appeal. United States v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997). The Court will consider each of Benavidez's claims in light of these standards.

### A.    Conflict of Interest

Benavidez claims that his conviction must be overturned because his attorney labored under a conflict of interest by applying for a job with the U.S. Attorney's Office while representing Benavidez. Movant asserts that had he known of counsel's pending application to be a federal prosecutor, he would have asked for substitute counsel. The government responds by arguing that counsel's act of applying for

5

a job as an Assistant U.S. Attorney constitutes, at most, only a potential conflict, and that such a speculative claim fails to identify sufficient prejudice to overcome the procedural bar. Because Benavidez has failed to raise this claim on direct appeal, he must show cause and prejudice before it can be considered on the merits. <u>Cervantes</u>, 132 F.3d at 1109. The cause prong need not be addressed under the circumstances, however, because the Court concludes that as a matter of law Benavidez cannot show prejudice.

The right to counsel under the Sixth Amendment entails "a correlative right to representation that is free from conflicts of interest." <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1980). It should be remembered, however, that a defendant must prove that his attorney was "burdened by an actual conflict of interest," not one that is merely speculative. <u>Strickland</u>, 466 U.S. at 692. <u>See also</u> <u>Beets v. Scott</u>, 65 F.3d 1258, 1268 (5th Cir. 1995) (en banc), <u>cert. denied</u>, 116 S. Ct. 1547 (1996) (noting that "not every potential conflict, even in multiple representation cases, is an 'actual' one for Sixth Amendment purposes"). To establish an actual conflict, "[t]he petitioner must specifically identify instances in the record that reflect that his counsel made a choice between possible alternative courses of action." <u>Perillo v. Johnson</u>, 79 F.3d 441, 447 (5th Cir. 1996). In other words, "petitioner must show adverse effect, meaning that 'some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest.'" <u>Hernandez v. Johnson</u>, 108 F.3d 554, 559 (5th Cir.), <u>cert. denied</u>, 118

6

S. Ct. 447 (1997) (quoting <u>Perillo</u>, 79 F.3d at 449).

Applying these standards to movant's claim, Benavidez fails to show that he suffered any actual prejudice from his trial counsel's efforts to seek employment as a federal prosecutor. Instead, Benavidez simply alleges that counsel's pending application for employment with the U.S. Attorney's Office "created a potential conflict of interest." Memorandum in Support of § 2255 Motion at 5 (hereinafter "Movant's Memo at __"). All he offers in support of the claim that this "potential" conflict ultimately matured into an actual conflict are his conclusory allegations. For example, Benavidez states: "Mr. Martinez refused to comply with the requests that Petitioner asked of Mr. Martinez, such as objecting to errors that Petitioner felt were objectionable." Movant's Memo at 4. The claim that counsel failed to make unspecified objections at trial is too conclusory to merit serious consideration. <u>See Schlang v. Heard</u>, 691 F.2d 796, 799 (5th Cir. 1982), <u>cert.</u> <u>denied</u>, 461 U.S. 951 (1983) (holding that "[m]ere conclusory statements do not raise a constitutional issue in a habeas case").

When pressed by the District Court to explain what trial counsel did to help the prosecution, movant responded:

> I don't know, sir. He could have done--I think he could have done more--like, when we were going through that jury selection stuff, I had told him there was one juror that I thought might know me or I might know. And he just told me to let it go.

1/25/94 Sent. Hrg. Tr. at 4. Even taking Benavidez's statement as true, however, it does not support the claim that counsel's failure to further inquire into the juror's background was designed to

benefit the government at Benavidez's expense. He does not suggest, for example, that counsel had any inkling about the juror's propensities to favor either the prosecution or defense. Nor does he claim that counsel was given any reason to believe that the juror in question was likely to favor the prosecution if selected to serve on the jury. Again, a "habeas corpus petitioner must demonstrate that the conflict is actual rather than speculative." Ware v. King, 694 F.2d 89, 92 (5th Cir. 1982), cert. denied, 461 U.S. 930 (1983).

It is plain, therefore, that petitioner has not identified with the requisite specificity that his trial counsel ever intentionally promoted his own personal interests over those of his client. See Zuck v. Alabama, 588 F.2d 436, 439 (5th Cir.), cert. denied, 444 U.S. 833 (1979) (holding that actual conflict occurs only when defense counsel places himself in situation inherently conducive to divided loyalties such as where he owes duties to a party whose interests are adverse to the defendant); see also Adanandus v. Johnson, 947 F.Supp. 1021, 1056 (W.D. Tex. 1996) (holding that mere fact that § 2254 petitioner's trial counsel was a candidate for a position in the U.S. Attorney's Office at the time of trial was insufficient to support a finding of actual conflict).

This conclusion is further supported by the record of movant's two hearings before the District Court on this very claim. Prior to movant's sentencing, the District Court heard argument and received testimony in connection with Benavidez's motion to set aside his verdict and grant a new trial—a motion that was based in large part

8

on movant's conflict of interest claim. After hearing from both Benavidez and his new counsel at the second hearing, the District Court unequivocally stated, "I do not find any conflict." 1/25/94 Sent. Hrg. Tr. at 20. As the Supreme Court has observed: "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect." United States v. Frady, 456 U.S. 152, 164-65 (1982).

Consequently, because Benavidez has failed to show that the potential conflict of interest he identifies ever ripened into an actual conflict of interest, his claim must be rejected for lack of prejudice.[2]

**B.    Failure to Strike Biased Juror**

Benavidez complains that one of the jurors in his criminal trial should have been stricken from the panel because he may have known movant. In addition to making this general claim, he specifically alleges that by failing to strike the juror in question, the government engaged in misconduct and his own counsel rendered ineffective assistance. The government responds that Benavidez has not shown either that the juror, Miguel Watts, was actually biased

---

[2]Resolution of this issue also resolves Benavidez's claim that his trial counsel rendered ineffective assistance of counsel by failing to disclose his alleged conflict of interest prior to trial, or that appellate counsel erred in not raising this issue on appeal. It is well settled that "mere speculation about a conflict . . . is insufficient to establish ineffective representation." United States v. Arzola-Amaya, 867 F.2d 1504, 1515 (5th Cir.), cert. denied, 493 U.S. 933 (1989).

9

against him or that movant was prejudiced by the failure to remove the juror. Once again, because Benavidez has failed to raise this claim on direct appeal, he must show cause and prejudice before it can be considered on the merits here. See Cervantes, 132 F.3d at 1109. This Court agrees with the government that movant has not established the requisite prejudice to prevail.

The Sixth and Fourteenth amendments of the U.S. Constitution guarantee all criminal defendants the right to a trial by an impartial jury. United States v. Hinojosa, 958 F.2d 624, 631 (5th Cir. 1992). The principal way that a defendant's right to an impartial jury is protected is "through the system of challenges exercised during the voir dire of prospective jurors." United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976). The actual selection of a jury panel, however, involves trial strategy and is thus committed to the discretion and tactical judgment of trial counsel. Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995). A prospective juror must be removed from a case only if the juror has demonstrated actual bias. Nell, 526 F.2d at 1229. The party challenging a juror on the basis of bias has the burden of establishing "that the juror in question exhibited actual bias: That is, either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed." Ward v. United States, 694 F.2d 654, 665 (11th Cir. 1983) (citing Nell, 526 F.2d at 1227-30).

Here, other than asserting his potential familiarity with juror

CHMPDF - www.fastio.com

Watts, Benavidez never alleges or proves that the juror had any animus towards him or bias in favor of the prosecution. Nor has he attempted to show with any specificity that Watts' membership on the jury influenced the guilty verdict in any way. Absent evidence to the contrary, a reviewing court must presume that jurors were fair and impartial at trial "as indeed they swore to be." United States v. Khoury, 901 F.2d 948, 955 (11th Cir. 1990), modified, 910 F.2d 713 (1990) (footnote omitted). Not only has movant offered no evidence supporting his claim of potential juror bias, his pleadings indicate only that Benavidez may have known juror Watts. See Movant's Memo at 6 ("I told [counsel] there was one juror that I thought might know me or I might know.").[3]

The Fifth Circuit has rejected claims of bias in cases where the potential bias was much more apparent than in this case. See, e.g., Teague, 60 F.3d at 1172 (rejecting defendant's claim of juror bias where several veniremembers admitted that they knew the woman who was both the victim's grandmother and a key prosecution witness); Celestine v. Blackburn, 750 F.2d 353, 361 (5th Cir. 1984), cert. denied, 472 U.S. 1022 (1985) (affirming the refusal to strike a juror for bias even though the juror knew both the prosecuting attorney and the granddaughter of the murder victim). See also Montoya v. Scott, 65 F.3d 405, 419 (5th Cir. 1995), cert. denied, 116 S. Ct. 1417 (1996) (holding that mere fact that juror knew the person defendant was on

---

[3]Benavidez never clearly indicates whether his suspicion was verified and, if so, when and how he did so. This suggests both that any acquaintance with the juror was distant at best and that counsel had little reason to pursue the matter.

11

trial for murdering was insufficient to challenge the juror for cause). The mere fact that a juror may have some personal knowledge of the parties does not create a presumption of bias either for or against the known party. As the Fifth Circuit stated: "Such attenuated associations do not create a presumption of bias against a defendant." Celestine, 750 F.2d at 361.

Because Benavidez has not shown that juror Watts was tainted by either actual or presumed bias--or even that the juror actually knew him--his claim fails to adequately establish prejudice.[4]

### C.   Constitutionality of 28 U.S.C. § 922(g)

Benavidez claims for the first time on collateral review that his conviction is unconstitutional because 28 U.S.C. § 922(g) violates the Commerce Clause under the Supreme Court's analysis in United States v. Lopez, 514 U.S. 549 (1995). This very claim, however, has been rejected by the Fifth Circuit on numerous occasions. As that court recently reiterated:

> The constitutionality of § 922(g)(1) is not open to question. In United States v. Rawls, 85 F.3d 240 (5th Cir. 1996), we held that "neither the holding in Lopez nor the reasons given therefor constitutionally invalidate § 922(g)(1)." Id. at 242. Accordingly, [appellant's] constitutional challenge is foreclosed by circuit precedent.

United States v. Gresham, 118 F.3d 258, 264 (5th Cir. 1997), cert. denied, 118 S. Ct. 702 (1998). Consequently, Benavidez cannot obtain

---

[4]Movant's bias claim is little more than a conclusory and speculative allegation of potential juror bias. As such, it can also be rejected on the alternative and familiar ground that a habeas petitioner is "not entitled to relief based on mere conclusory allegations." McCoy v. Lynaugh, 874 F.2d 954, 961 (5th Cir. 1989). Benavidez's failure to prove beyond mere speculation that a member of his jury was biased against him is thus fatal to his claim here.

§ 2255 relief on this issue.

### D.   Challenge to Confidential Informant's Unsworn Statements

As best as this Court can decipher from movant's fourth claim, Benavidez attacks the veracity and reliability of the confidential informant who provided information to law enforcement officials that was later used to obtain a warrant to search movant's residence.  At its essence, however, movant's claim is simply an attack on the validity of the search warrant--a claim that has already been considered and rejected on direct appeal.[5]   After considering Benavidez's challenge to the search warrant on appeal, the Fifth Circuit held: "Our review of the record persuades that the affidavit upon which the search warrant was issued was not a bare bones affidavit but, rather, contained sufficient detail and data to constitute the requisite probable cause, thus triggering the good-faith exception to the exclusionary rule."   United States v. Benavidez, No. 95-40108, slip op. at 2 (5th Cir. Feb. 9, 1996) (footnotes omitted).  As the government correctly points out, because this claim was raised and rejected in movant's direct appeal, it is now barred from collateral review.  See United States v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997).

---

[5]See Movant's Memo at 13 ("[T]here was just no meat on the 'bare bones;' the magistrate lacked a substantial basis to credit the hearsay of the informants."); id. at 15 ("Agent Mora's behavior does not fall within the ambit of good-faith exception of UNITED STATES V. LEON, 104 S. CT. 3405, for he had no good-faith reason to believe the magistrate had made a probable cause determination."); id. at 15 ("Petitioner contends that the affidavit failed to demonstrate adequately the informant's veracity, reliability or his basis of knowledge so as to support probable cause for issuance of the arrest warrant.").

### E.   Prosecutorial Misconduct

In his fifth point of error, Benavidez complains that prosecutorial misconduct deprived him of a fair trial.   More specifically, movant claims that the government prosecutor inappropriately made references to Benavidez's community of Lopezville in an attempt to "paint a picture of a violent person" who came from "an area filled with gangs and extreme violence."   Movant's Memo at 16-18.[6]   The government argues that the prosecutor's comments were neither inappropriate nor harmful.   Because this claim was not raised on direct appeal, Benavidez must overcome the procedural bar.   See United States v. Patten, 40 F.3d 774, 776 (5th Cir. 1994), cert. denied, 515 U.S. 1132 (1995).

Consideration of this claim begins with the observation that "a prosecutor's improper arguments will, in itself, exceed constitutional limitations in only the most 'egregious case.'" Menzies v. Procunier, 743 F.2d 281, 289 (5th Cir. 1984) (quoting Houston v. Estelle, 569 F.2d 372, 382 (5th Cir. 1978)).   Moreover, the comments of the prosecutor "are not considered in isolation, but are evaluated in the context of the entire trial as a whole including the prosecutor's entire closing argument."   Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985), cert. denied, 476 U.S. 1178 (1986).   An "improper jury argument by the [prosecuting attorney] does not present a claim of constitutional magnitude in a federal habeas

---

[6]Benavidez also complains that the prosecutor acted improperly by allowing an allegedly biased juror to be seated on the jury.   That claim was considered and rejected above.   See supra subsection B.

14

action unless it is so prejudicial that the . . . trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." <u>Jones v. Butler</u>, 864 F.2d 348, 356 (5th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1075 (1989).  To establish that a prosecutor's remarks rise to this level of prejudice, one must demonstrate "that 'the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial' that the conviction would not have occurred but for the improper remarks." <u>Turner v. Johnson</u>, 106 F.3d 1178, 1188 (5th Cir. 1997) (quoting <u>Jones</u>, 864 F.2d at 356)).

Viewed in light of this standard, Benavidez's claim of prosecutorial misconduct borders on frivolousness.[7]  Movant has failed to articulate any way in which the prosecutor's actions were improper here.  To begin with, movant does not dispute that his mother's house was in Lopezville, that he identified that house as his residence to his parole officer, and that he was arrested in a bedroom of that house.  While the prosecutor did use the term "Lopezville" approximately seven times over the course of the entire trial, not one of those times involved any reference to violence or to that community's alleged reputation for being a crime-ridden area.  <u>See</u> Trial Tr. Vol. I at 27, 38, & 88; Vol. II at 188, 190, 224, & 234.[8]

---

[7]A complaint "is frivolous where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory." <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997).

[8]It should be noted that Benavidez himself used the term "Lopezville" at least twice during his own testimony at trial.  <u>See</u> (continued...)

15

Each time the prosecutor referred to Lopezville he did so only as a
means of identifying where Benavidez or other individuals relevant to
the case resided, or where significant events occurred. <u>Id.</u>[9]  The
fact that the prosecuting attorney never made reference to Lopezville
during his entire closing argument to the jury is also inconsistent
with movant's misconduct claim. <u>See</u> Trial Tr. Vol. II at 258-63,
275-77.

Because movant has failed to demonstrate that the prosecutor's
remarks were improper, let alone that they were persistent and
pronounced or that his conviction would not have occurred but for the
remarks, <u>Turner</u>, 106 F.3d at 1188, Benavidez has not established
prejudice in order to overcome the procedural bar.  This claim too
must fail.

**F.    Admission of Statements Made by Confidential Informant**

As a sixth basis for relief, Benavidez appears to assert that
the District Court erred by upholding the search warrant, given that
the confidential informant was allegedly incapable of distinguishing
between Benavidez and his twin brother, Carlos.  While difficult to

[8](...continued)
Trial Tr. Vol. II at 224 & 237.  Another defense witness, movant's
mother, likewise used the term during her testimony. <u>See</u> Trial Tr. Vol.
II at 166.  In fact, the record indicates that it was Mrs. Benavidez who
first raised the issue of violent activity in her community when she
explained that it was she, not movant, who purchased the guns in
question in response to dangerous conditions in her neighborhood.  <u>See</u>
<u>id.</u>  Benavidez also described the area as a "bad neighborhood" during
his direct examination. <u>See id.</u> at 210-11.

[9]Identification of Benavidez's residence was an important part of
the prosecution's case, given that Benavidez was claiming that he was
merely a guest in his mother's Lopezville house at the time of his
arrest and that the firearms found in the bedroom where he was staying
did not belong to him.

16

follow, movant's claim appears to simply be a variation of his previous challenge to the sufficiency of the search warrant, which was decided against him on direct appeal. Insofar as this is merely a reincarnation of Benavidez's previous claim, it is foreclosed from collateral review. See Rocha, 109 F.3d at 229. To the extent, however, that movant is raising a claim that differs materially from the claim rejected by the Court of Appeals, he must show cause for failing to pursue the claim on appeal. See Cervantes, 132 F.3d at 1109.

The cause standard requires a habeas petitioner to show that "some objective factor external to the defense" prevented the movant from raising the claim. Rodriguez v. Johnson, 104 F.3d 694, 697 (5th Cir.), cert. denied, 117 S. Ct. 2438 (1997) (citations omitted). Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim. Id. If a movant fails to demonstrate cause, the court need not consider whether there is actual prejudice. Id. Here, Benavidez has not alleged, much less proven, that objective factors external to the defense prevented him from raising this claim previously. Because movant fails to demonstrate cause, his claim must be rejected.

### G.   Admission of Movant's Past Felony Convictions

Benavidez next argues that the government violated Federal Rule of Evidence ("FRE") 403 by introducing evidence of more than one prior felony conviction to establish the predicate offense for a

violation of 18 U.S.C. § 922(g)(1). He relies on the Supreme Court's recent decision in Old Chief v. United States, 117 S. Ct. 644 (1997), for the proposition that it is improper for the government to publish the name and nature of a defendant's previous convictions when the defendant has stipulated to the prior felony conviction element of § 922(g)(1). In evaluating this claim, we must first determine the appropriate standard of review.

A claim asserting a violation of a rule of evidence is not the kind that may be raised under § 2255. See Delegal v. United States, 363 F.2d 433, 434 (5th Cir. 1966) (holding that claim that government improperly questioned defendant regarding prior convictions was not cognizable under § 2255). In order to succeed on such a claim, Benavidez must demonstrate that the error could not have been raised on direct appeal and, if condoned, would result in a fundamental miscarriage of justice. Pierce, 959 F.2d 1301. A fundamental miscarriage of justice may be demonstrated by a showing that the alleged error "has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 295, 321 (1998). The Fifth Circuit has explained what is required to make such a showing:

> To demonstrate actual innocence, it is necessary that the petitioner "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it)."

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (citations omitted).

Benavidez does not satisfy this standard here. In affirming his

18

conviction, the Fifth Circuit found that "the evidence abundantly supports the jury's verdict." Benavidez, No. 95-40108, slip op. at 2. Nothing in his current pleadings could lead to a contrary conclusion. Thus, this claim is not cognizable in a § 2255 proceeding. Even if this claim did raise a question of constitutional magnitude, however, movant's claim would still be procedurally barred for the additional reason that Benavidez cannot show cause for failing to raise the claim on direct appeal.

As previously indicated, movant's complaint about the admission of evidence is based on the Supreme Court's holding in Old Chief v. United States, which was decided approximately two years after Benavidez was convicted. In Old Chief, the Supreme Court held that a district court abused its discretion in a § 922(g)(1) prosecution by allowing the government to introduce evidence on the nature of each of the defendant's three prior felony convictions even though the defendant had stipulated that the prior felony conviction element of the statute was satisfied. In concluding that this created a substantial risk of unfair prejudice and violated FRE 403, the Court noted: "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun." Id. at 655.

In the present case, Benavidez similarly entered into a stipulation with the government establishing that his four felony convictions satisfied the prior conviction element of § 922(g)(1).

19

Rather than merely referencing that stipulation in its opening argument, however, the government identified the name and nature of each of the four convictions without objection from defense counsel.[10] Thus, Old Chief would seem to be directly applicable to Benavidez's case. Because this case is here on collateral review, however, the inquiry does not stop there. As has been explained, movant must show both cause and prejudice for failing to raise this issue on appeal. Cervantes, 132 F.3d at 1109.

While at first blush it might appear that Benavidez can show cause here since Old Chief did not even exist until after his judgment became final, closer inspection reveals that the principles underlying the Supreme Court's decision in that case have been applied in the Fifth Circuit for many years. For example, in a case decided five years before Benavidez was convicted, the court considered a defendant's claim that the government violated FRE 403 when it put on evidence of the defendant's three prior felony convictions to establish a violation of § 922(g)(1). See United States v. Quintero, 872 F.2d 107, 111 (5th Cir. 1989), cert. denied, 496 U.S. 905 (1990). As in Old Chief, the defendant in Quintero had offered to stipulate to a prior felony conviction. After expressing serious concerns about the prejudice inherent in allowing evidence of a defendant's prior convictions to be presented to a jury, the Quintero court stated: "We find that under the circumstances of this

---

[10]See Trial Tr. Vol. I at 26. The four convictions included two separate burglary of a building convictions, theft a person, and burglary of a habitation.

case, evidence regarding Quintero's two additional felony convictions was both unnecessary and irrelevant, and should not have come before the jury." Id. This holding demonstrates that the type of claim Benavidez now raises was available in this Circuit long before Old Chief was decided.

Perhaps more importantly, the transcript from the hearing held to consider Benavidez's motion to set aside his verdict reveals that movant had actual notice of this claim even before his sentencing. More than once during that hearing, the District Court expressed its concern about "whether the government properly can allege in an indictment more than one felony offense that is going to be used as a predicate for possession of a firearm by a felon." 1/13/95 Sent. Hrg. Tr. at 9. After discussing some of its concerns about this issue, the Court went on to state: "Now, I think that may be a ground that exists in his favor. But that's for appeal." Id. at 10. In light of these statements by the District Court to Benavidez and his counsel, Benavidez must be charged with knowledge of the basis of the claim that he now raises. Because movant makes no effort to identify any objective factor external to the defense that prevented him from raising this claim on appeal, it is procedurally barred. See Rodriguez, 104 F.3d at 697.[11]

---

[11]While the admission of Benavidez's prior felony convictions may have been a violation of the Federal Rules of Evidence, it is also unlikely that movant could show prejudice in the sense that "the result of the proceeding would have been different" but for the failure to prevent that evidence from being admitted. See United States v. Anderson, 987 F.2d 251, 261 (5th Cir.), cert. denied, 510 U.S. 853 (1993). It should be noted that Benavidez raised the issue of his past
(continued...)

21

## H.  Ineffective Assistance of Counsel Claims

The final category of claims raised by Benavidez allege ineffective assistance of counsel by both his trial and appellate attorneys. "Because a crucial element of a fair trial is absent when defense counsel is constitutionally ineffective," United States v. Medina, 118 F.3d 371, 373 (5th Cir. 1997), claims of ineffective assistance are cognizable under § 2255. United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995), cert. denied, denied, 116 S. Ct. 1056 (1996). Such claims, if successfully proven, overcome the procedural bar described above. United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995), cert. denied, 117 S. Ct. 1017 (1997).

To establish ineffective assistance of counsel, petitioner must meet the familiar requirements of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Benavidez must prove both counsel's performance was deficient and that the performance actually prejudiced his defense. Id. at 687. A successful showing of deficient performance requires evidence that counsel's errors were so

---

[11](...continued)
convictions, time spent in prison, and other past criminal activity himself during both direct and cross-examination. See, e.g., Trial Tr. Vol. II. at 206, 211-12, 226-27, 229, & 235. Movant's mother and brother also made references and allusions to Benavidez having been in prison and on parole. Furthermore, it must be remembered that the District Court gave cautionary instructions regarding the use of that evidence both during voir dire and in its jury charge. For example, when instructing the jury, the District Court stated: "And remember that any evidence of his previous convictions . . . must never be considered as evidence of guilt of the crime for which he is on trial." Trial Tr. Vol. II. at 253. More importantly, the Fifth Circuit noted that "the evidence abundantly supports the jury's verdict." Benavidez, No. 95-40108 slip op. at 2. In light of these facts, Benavidez would have difficulty showing that he would not have been convicted "but for" the introduction of evidence regarding past felony convictions.

objectively unreasonable that they deprived the defendant of a fair trial whose result is reliable. Id. "To establish prejudice, [one] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Rosalez-Orozco, 8 F.3d 198, 199 (5th Cir. 1993) (citations omitted). See also Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding that counsel's deficient performance must have rendered the verdict fundamentally unfair or unreliable before prejudice is shown). In applying these standards to Benavidez's case, the Court will consider his claims against trial and appellate counsel separately.

### 1.   Conduct of Trial Counsel

Benavidez posits numerous theories in support of his ineffective assistance of trial counsel claim, many of which are so conclusory and unsupported as to merit no consideration. Falling into this category are the following claims: trial counsel failed to object to prejudicial comments made by the District Court during voir dire and opening statements; trial counsel did not raise the issue of his state parole violation warrant being executed the same day as his federal search warrant; and trial counsel failed to raise a Speedy Trial Act claim.[12] Benavidez points to no basis in the record for

---

[12]The Court pauses to note that Benavidez's Speedy Trial Act claim appears on its face to be factually incorrect. Presumably referring to his date of arrest or initial appearance, Benavidez states that he was not indicted "until 88-days later." Yet, his criminal file reveals that he was arrested on July 29, 1994, he was initially brought before a magistrate judge on August 1, 1994, and the indictment was filed on August 2, 1994. These events all occurred within the span of four days.

23

these allegations and, other than his own conclusory statements, fails to proffer any evidence to support them. Such argument is insufficient to raise a constitutional issue in a collateral proceeding. As the Fifth Circuit has consistently stated, speculative and unspecific charges in a habeas petition do not warrant relief or an evidentiary hearing. See Wilson v. Butler, 813 F.2d 664, 671 (5th Cir. 1987), cert. denied, 484 U.S. 1079 (1988); Schlang, 691 F.2d at 799. Each of these claims should be summarily dismissed.

Additionally, several of movant's other ineffective assistance of trial counsel claims merit no further comment in light of this Court's analysis of related claims above. For example, the Court's conclusion that Benavidez failed to show that his trial counsel labored under an actual conflict of interest also resolves his ineffective assistance claim on the basis of the same alleged conflict.[13] The same holds true with his claim that counsel was ineffective for failing to strike the allegedly biased juror,[14] as

---

[13]See supra n.2. While the Court certainly agrees that counsel should have immediately disclosed the fact that he applied for a position with the U.S. Attorney's Office, the question here is whether Benavidez can show that he was actually prejudiced by counsel's failure to do so. As explained, Benavidez makes no such showing.

[14]In the context of voir dire, Benavidez must show that counsel's decision not to challenge the impanelment of Mr. Watts was "so ill chosen that it permeates the entire trial with obvious unfairness" in order to establish that counsel's performance resulted in actual prejudice. Teague, 60 F.3d at 1172 (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)). Given that he has identified no way in which his trial was adversely affected by the service of juror Watts, movant's claim here does not even approach fulfillment of this standard. "Under Strickland, . . . a petitioner cannot 'simply allege but must affirmatively prove prejudice.'" Wilkerson v. Collins, 950 F.2d 1054,
(continued...)

well as the claim that counsel erred by not objecting to the prosecutor's use of the term "Lopezville." None of these claims merit relief or further attention.

Of movant's numerous ineffective trial counsel claims, therefore, only a few require further consideration. First, Benavidez complains that counsel failed to object to the District Court's refusal to require disclosure of the confidential informant's identity. Like his other claims, Benavidez gives scant details about what he believes counsel did wrong. Most importantly, he makes no attempt to indicate how disclosure of the confidential informant would have helped his case. "A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test." Shaid, 937 F.2d at 236. Thus, even assuming that Benavidez's counsel erred in not pursuing the informant's identity, movant fails to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rosalez-Orozco, 8 F.3d at 199. Consequently, this claim should be rejected.

Benavidez next faults his trial counsel for failing to request an evidentiary hearing on his motion to suppress. Movant cannot prevail on this claim for several reasons. First, the District Court

---

[14](...continued)
1065 (5th Cir. 1992), cert. denied, 509 U.S. 921 (1993) (citations omitted). See Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) (holding that "the decision whether to request certain voir dire questions was a strategic decision of the attorney and his failure to do so, even against his client's wishes, is not ineffective representation").

did hold a hearing to consider Benavidez's motion to suppress on October 4, 1994. Although the hearing was not long and no witnesses were called, a hearing was held.

Second, movant has not established that he was entitled to an evidentiary hearing on his motion to suppress. The Fifth Circuit has explained when such a hearing is necessary:

> [A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. . . . General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice.

United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983) (internal citations omitted). Benavidez has not alleged the existence of the type of factors that would warrant an evidentiary hearing on his motion to suppress. Nothing in the motion suggests that the District Court required extensive oral argument or the presentation of evidence. Instead, it is apparent that the District Court was able to adequately consider the relevant issues and controlling legal authority on the briefs submitted by both sides.

Third, and most importantly, Benavidez has not given any indication of how his trial was adversely impacted by counsel's failure to request an evidentiary hearing on his motion to suppress. For example, he does not identify any evidence that he might have introduced at such a hearing or suggest the existence of favorable witnesses who may have been called to testify. In short, he does not adequately allege prejudice under the Strickland standard.

26

Benavidez, in fact, cannot show prejudice in this instance because the legal foundation of his suppression motion (i.e., that the "bare bones" affidavit of the confidential informant did not establish probable cause to support the search warrant) was found to be meritless by the Fifth Circuit. Thus, this claim lacks merit.

Benavidez next asserts that his trial counsel rendered ineffective assistance by failing to renew his motion for acquittal at the close of all evidence. While the government concedes "that counsel's failure to renew his motion for a judgment of acquittal at the close of the evidence constitutes a deficient performance," it also correctly points out that Benavidez cannot show that he was prejudiced by counsel's deficiency. As mentioned above, in order to prove Strickland's prejudice prong, movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rosalez-Orozco, 8 F.3d at 199. Here, because the evidence was sufficient to support Benavidez's conviction, he cannot show that a renewal of his motion for acquittal would have succeeded. As the Fifth Circuit stated in affirming movant's conviction: "Our review further persuades us that the evidence abundantly supports the jury's verdict." Benavidez, No. 95-40108, slip op. at 2. See United States v. Willis, 38 F.3d 170, 178 n.10 (5th Cir. 1994), cert. denied, 515 U.S. 1145 (1995) (holding that trial counsel was not ineffective for failing to renew motion for acquittal where the evidence was sufficient to support the defendant's conviction). As with all of

27

movant's other claims against his trial counsel, this claim fails under the <u>Strickland</u> standard and should be rejected.

### 2. Conduct of Appellate Counsel

Finally, Benavidez claims that he was denied the effective assistance of appellate counsel as well. He maintains that his appellate counsel was deficient in not raising the issue of trial counsel's alleged conflict of interest. The effectiveness of appellate counsel is governed by the <u>Strickland</u> standard which, of course, requires Benavidez to show deficient performance and actual prejudice. <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1998) (holding that the "<u>Strickland</u> standard applies to claims of ineffective assistance by both trial and appellate counsel"). The Court finds that movant can satisfy neither prong of the test here.

Benavidez cannot show deficient performance, for example, because it was reasonable for his appellate counsel to not pursue the conflict of interest issue on appeal, particularly in light of the fact that the same attorney forcefully argued the conflict issue before the District Court without success. Likewise, Benavidez cannot show resulting prejudice in light of the District Court's finding that there was no such conflict of interest, and in light of this Court's finding that no actual conflict has been established in this case. Thus, the Court finds movant's ineffective assistance of appellate counsel claim to be without merit.

### III. CONCLUSION

For the foregoing reasons, this Court recommends that movant

28

Cristobal Benavidez's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 be denied and that the government's motion to dismiss be granted.

The Clerk shall send copies of this Report and Recommendation to movant and counsel for respondent, who have ten (10) days after receipt thereof to file written objections pursuant to General Order 80-5. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas this ___4th___ day of March, 1998.

Peter E. Ormsby
UNITED STATES MAGISTRATE JUDGE

29